IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VITAWORKS IP, LLC, AND VITAWORKS, LLC | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 19-2259 (GBW) (Consolidated) |
| v. | ) ) | ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| GLANBIA NUTRITIONALS (NA), INC., ET AL., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF EMERGENCY MOTION TO
COMPEL COMPLIANCE WITH, AND REMEDY VIOLATION OF,
THE STIPULATED PROTECTIVE ORDER (D.I. 51)
AND THE COURT'S MAY 30, 2023 ORDER (D.I. 240)**

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.     SUMMARY OF ARGUMENT ...................................................................................... 1

III.    STATEMENT OF FACTS ............................................................................................. 3

IV.     ARGUMENT ................................................................................................................. 7

      A.      Vitaworks has indisputably violated the Protective Order. .................................... 7

      B.      The Court should compel Vitaworks to fully comply with the Protective
            Order and the May 30 Order. ................................................................................... 9

            1.      Vitaworks is improperly withholding facts concerning the
                  violation. ................................................................................................. 10

            2.      Vitaworks has waived any privilege or work product protection as
                  to any documents related to the Protective Order violation by
                  putting those materials at issue. ............................................................ 11

      C.      The Court should impose sanctions for the Protective Order violation now,
            and consider additional sanctions after Vitaworks comes into compliance
            with the Court's Orders ........................................................................................... 13

V.      CONCLUSION ............................................................................................................. 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   306 F.R.D. 234 (N.D. Cal. 2015) .................................................................................10, 11, 12

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 5:11-cv-01846, 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014) .......................................14

*Ceats, Inc. v. TicketNetwork, Inc.*,
   No. 2:15-CV-01470, 2021 WL 3738847 (E.D. Tex. Aug. 24, 2021) ......................................13

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) .................................................................................................................14

*Citrix Sys., Inc. v. Workspot, Inc.*,
   C.A. No. 18-588-LPS, 2020 WL 5884970 (D. Del. Sept. 25, 2020) ................................14, 15

*Dorf & Stanton Commcn's, Inc. v. Molson Breweries*,
   100 F.3d 919 (Fed. Cir. 1996) ...............................................................................................11

*Glick v. White Motor Co.*,
   458 F.2d 1287 (3d Cir. 1972) ..................................................................................................8

*Hercules Inc. v. Exxon Corp.*,
   434 F. Supp. 136 (D. Del. 1977) .............................................................................................13

*Hunter Eng'g Co. v. Hennessy Indus., Inc.*,
   No. 4:08 CV 465, 2010 WL 1186454 (E.D. Mo. Mar. 29, 2010) ..........................................14

*In re Grand Jury Subpoena*,
   274 F.3d 563 (1st Cir. 2001) ..................................................................................................11

*MKS Instruments, Inc. v. Adv. Energy Indus., Inc.*,
   No. 03-469 JJF, 2005 WL 8170597 (D. Del. Aug. 24, 2005) ................................................12

*MobileMedia Ideas LLC v. Apple Inc.*,
   C.A. No. 10-258, 2012 WL 5379056 (D. Del. Oct. 31, 2012) .........................................13, 15

*Novartis Pharms. Corp. v. EON Labs Mfg., Inc.*,
   206 F.R.D. 396 (D. Del. 2002) ...............................................................................................12

*Quiroga v. Hasbro, Inc.*,
   934 F.2d 497 (3d Cir. 1991) ...................................................................................................14

*Resolution Tr. Corp. v. Dabney*,
    73 F.3d 262 (10th Cir. 1995) ................................................................................................10

*Silicon Knights, Inc. v. Epic Games, Inc.*,
    No. 5:07-CV-275-D, 2010 WL 11566361 (E.D.N.C. June 15, 2010) ....................................10

*Smith & Fuller, P.A. v. Cooper Tire Rubber Co.*,
    685 F.3d 486 (5th Cir. 2012) ................................................................................................13

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ..............................................................................................................10

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*,
    992 F.2d 932 (9th Cir. 1993) ................................................................................................13

**Other Authorities**

35 U.S.C. § 295 ..............................................................................................................15, 16

Fed. R. Civ. P. 37 ........................................................................................................13, 14, 15

Fed. R. Civ. P. 26 ........................................................................................................13, 14

## I.    NATURE AND STAGE OF PROCEEDINGS

As the Court is aware, counsel for Vitaworks[1] at Cravath recently reported that its co-counsel Fangda Partners ("Fangda") violated the Stipulated Protective Order (D.I. 51) ("PO") by conveying the Highly Confidential Information of Defendant Qianjiang Yongan Pharmaceutical Co. Ltd. ("QYP") to the principal of Vitaworks, Dr. Songzhou Hu.  (D.I. 223; D.I. 231; D.I. 234; D.I. 236).  But despite QYP's and the Court's best efforts, we still do not know the pertinent facts concerning the violation, because those facts are being shielded by Vitaworks in a misuse of the attorney-client privilege.  Because Vitaworks has failed to come clean about its Protective Order violation reported by its own litigation counsel, QYP is forced to move the Court to enforce the disclosure requirements of Paragraph 9(b) of the Protective Order and the Court's May 30, 2023 Order (D.I. 240).

## II.    SUMMARY OF ARGUMENT

This incident raises four distinct questions for the Court.  Two of the questions now have clear answers, but two remain unresolved due to Vitaworks' noncompliance.

1.    The first question is whether Vitaworks and its law firms have complied with Paragraph 9(b) of the Protective Order, the Court's May 24, 2023 Order, and the Court's May 30, 2023 Order (D.I. 240), which required production of certain affidavits, documents, and privilege logs by June 2, 2023.  The record is clear that they have not.  The conclusory declarations from Dr. Hu and Dr. Qi of Fangda are deficient on their face.  Paragraph 5.a of the May 30 Order and Paragraph 9(b) of the Protective Order required disclosure of pertinent facts regarding the unauthorized disclosure, including the specific protected information divulged by Fangda to Dr.

---

[1] "Vitaworks" refers collectively to the two Plaintiffs in this litigation, Vitaworks IP, LLC and Vitaworks, LLC.  Our understanding is that Dr. Songzhou Hu ("Dr. Hu") is the founder of Vitaworks IP LLC and President of Vitaworks, LLC.  *See, e.g.*, (D.I. 80 ¶¶ 2, 10–11); Ex. 1 (June 2, 2023 Decl. of S. Hu) ¶ 3.

Hu. That information still has not been provided to QYP or the Court. Vitaworks and Fangda each failed to produce a privilege log even though both submitted declarations referring to written communications between them.[2] In short, Vitaworks and Fangda have blatantly defied multiple Court orders.

2. The second question is whether the Protective Order was in fact violated by Vitaworks and Fangda. Here—despite Vitaworks' obstruction—the Court can and should conclude that there was such a violation, based on the admissions of Vitaworks' own counsel. After QYP filed its emergency motion on May 22 (D.I. 231), which included details of Cravath's report of the violation, Vitaworks' Delaware counsel at Morris Nichols ("MNAT") filed a letter on May 25, stating that MNAT and Cravath are "not in a position to dispute QYP's factual assertions in its May 22, 2023 Motion." (D.I. 234.) The May 25 letter also referred to the incident reported by Cravath as a "violation" and an "unauthorized disclosure." (*Id.*). This May 25 letter constitutes a conclusive judicial admission that a Protective Order violation occurred. Accordingly, there is no legal basis (nor, for that matter, factual basis) to entertain contrary assertions from Dr. Hu, Fangda, or any other attorney Vitaworks might retain.[3] The Court should thus find that (a) that Vitaworks has violated the Protective Order; and (b) that Highly Confidential information relating to QYP's manufacturing process has been improperly disclosed to Vitaworks and Dr. Hu. (*See* Part III.A below.)

---

[2] Moreover, Vitaworks barely responded to the Court's May 24 oral Order (D.I. 233), which requested a response to QYP's emergency motion by noon the following day. All the Court received on May 25 was a letter from two of Vitaworks' law firms stating that privilege prevented a substantive response, and a one-sentence response from Dr. Hu submitted through Parcels instead of his local counsel. (*See* D.I. 240 ¶ 4.)

[3] Cravath informed us on June 4 that Vitaworks has retained a different law firm, later identified as Gimigliano Mauriello & Maloney (*see* D.I. 249), to handle the Protective Order dispute, while Cravath continues to handle the remainder of this litigation.

3.    The third question concerns the nature and extent of the violation.  QYP has an urgent need for this information, in order to mitigate the risk to its own business, and the Court needs this information to determine the proper sanction(s) for the violation.  However, Vitaworks has used attorney-client privilege and the work product doctrine to avoid making this disclosure.  This is wholly improper.  Privilege does not apply to underlying facts, such as the specific information disclosed, who made the unauthorized disclosure, and to whom any unauthorized disclosures were made.  In any case, Vitaworks has waived any privilege by putting its attorneys' legal advice squarely at issue.  For example, Dr. Qi's May 21 letter asserts that there was no violation based on an "internal investigation" Fangda allegedly conducted.  Ex. 8 (Fangda May 21, 2023 Letter)  The law is clear that Vitaworks' reliance on privileged information to refute Cravath constitutes a waiver with respect to that information.  Accordingly, the Court should find that neither attorney-client privilege nor the work product doctrine apply here, and compel immediate full compliance with the Court's prior orders.  (*See* Part III.B below.)

4.    The final question is the appropriate sanction for the violation.  Courts have imposed a wide variety of sanctions for protective order violations, ranging from monetary fines all the way up to case-terminating sanctions.  At this time, QYP would request that (a) QYP be awarded its attorneys' fees and other costs for having to investigate the circumstances of the violation and for all litigation efforts related to it; and (b) the Court grant leave for QYP to move for additional sanctions after Vitaworks finally complies with the Court's orders.  (*See* Part III.C below.)

## III.    STATEMENT OF FACTS

Much of the background underlying the Protective Order violation has been provided to the Court in prior submissions.  (D.I. 223; D.I. 231; D.I. 234; D.I. 236.)  Five outside counsel firms have entered appearances on behalf of Vitaworks in this case: Vitaworks' lead firm Cravath,

Vitaworks' Delaware counsel at MNAT, two China-based law firms, Fangda Partners and Zhong Lun, and, as of June 6, 2023, Gimigliano, Mauriello, and Maloney. Fangda and Zhong Lun entered appearances as counsel in this case for the express purpose of obtaining access to QYP's Confidential and Highly Confidential Information. Ex. 2 (Mooney Apr. 7, 2023 Email); Ex. 3 (May Apr. 7, 2023 Email); Ex. 4 (Goswami Apr. 5, 2023 Letter); Ex. 5 (Kennedy Apr. 4, 2023 Letter); Ex. 6 (May Mar. 31, 2023 Email). Indeed, Vitaworks originally sought Protective Order clearance for these China-based law firms under the "expert" provision of the Protective Order, but had them instead enter appearances in order to obviate an objection raised by Defendants. Ex. 2; Ex. 4; (D.I. 185; D.I. 187.) Thus, by virtue of Fangda attorney Dr. Fang Qi being admitted *pro hac vice* in this case on April 6, (*see* D.I. 185), the Fangda team gained access to QYP's Confidential and Highly Confidential Information.

On April 10–12, 2023, three attorneys from Fangda—Dr. Fang Qi, Zhenhan Zhou, and Jiangzhi Liu—conducted inspections of QYP's facilities in Qianjiang City, China. During these inspections, ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████ (*See, e.g.*, D.I. 203 (Defs.' Opp. to Vitaworks' Letter Br.) at 1.)

On the evening of Tuesday, May 16, Cravath emailed QYP's counsel to notify QYP of a violation of the Protective Order, explaining that certain QYP Highly Confidential Information obtained by Fangda from the April inspection of QYP's facilities was orally disclosed to Dr. Hu. Ex. 7 (Hummel May 16, 2023 Email). The Protective Order in this case identifies Vitaworks' founder and President Dr. Hu *specifically by name* as someone not authorized to receive QYP's confidential information. (PO ¶ 4(g).) The email also stated that Cravath had directed Fangda to

destroy all QYP Confidential Information and QYP Highly Confidential Information in its possession. Ex. 7. The email did not address many pertinent facts of the violation, such as what specific information was disclosed, when the disclosure occurred, who made the disclosure, and to whom (other than Dr. Hu) the disclosure was made.

QYP's requests for additional information went unanswered until May 21, when Fangda finally responded, stating that "the team at Fangda Partners with access to QYP confidential information and highly confidential information has not shared with Dr. Hu any of QYP confidential information and highly confidential information." Ex. 8 (Fangda May 21, 2023 Letter). Fangda further stated that "all QYP confidential information and highly confidential information in the possession of Fangda Partners has been destroyed." *Id*. The next day, however, Cravath contradicted Fangda, stating that "we understand that the disclosure to Dr. Hu was made by an individual at Fangda Partners." Ex. 9 (Hummel May 22, 2023 Email). Cravath declined to provide nearly any further detail regarding the violation, citing attorney-client privilege. *Id*.

On May 22, QYP filed an Emergency Motion to Show Cause Why Plaintiffs Should Not Be Found in Violation of the Stipulated Protective Order. (D.I. 231.) This Court ordered Vitaworks to respond by noon on May 25, 2023. (D.I. 233.) Vitaworks' counsel at Cravath and MNAT submitted a letter on their own behalf, not for Vitaworks, confirming that they did not "dispute QYP's factual assertions in its May 22, 2023 Motion," but again declining to provide any substantive response, citing privilege. (D.I. 234.) Dr. Hu submitted a one-sentence statement containing no substantive response to the Court's Order and directly contradicting Morris Nichols' and Cravath's letter. (D.I. 235.) Fangda failed to provide any response at all.

On May 30, this Court granted-in-part QYP's Motion to Show Cause. It precluded use of protected information by unauthorized individuals, and ordered Vitaworks by no later than June 2,

2023 to submit sworn declarations from Dr. Hu, Dr. Qi, and *any other attorney* with Fangda Partners involved with the unauthorized disclosure explaining the pertinent facts concerning the violation . . ." and to produce to QYP all documents related to the alleged violation and logging any over which a privilege claim was asserted. (D.I. 240.)

Vitaworks' June 2 response did not comply.  For one thing, the only attorney from Fangda who submitted a declaration was Dr. Qi, despite the fact that two other Fangda attorneys (Zhenhan Zhou and Jiangzhi Liu) participated in the inspection of QYP's facilities at the center of the unauthorized disclosure.  Moreover, the Hu and Qi declarations were devoid of the information ordered by the Court.  In fact, Vitaworks has still not met its obligation to "immediately notify the Producing Party of ***all of the pertinent facts***" regarding the unauthorized disclosure, such as what specific information was disclosed and when the unauthorized disclosure occurred, as required by Paragraph 9(b) of the Protective Order.  Vitaworks' failure to provide any further information about the breach, despite our repeated queries, constitutes a separate violation.  (*See* PO ¶ 9(b).)

Notwithstanding the denials from Dr. Qi and Dr. Hu, even the incomplete information we have now makes clear that Cravath had an interaction with Dr. Hu on May 4 that caused an immediate flurry of concerned activity within Cravath.  On May 4, at 3:00 pm, Cravath attorneys Jonathan Mooney and Mollie Weiss had a call with Dr. Hu, Ex. 10 (VW_PO_0000216), and at 10:02 pm that night Dr. Hu forwarded attachments to Mr. Mooney and Ms. Weiss and "request[ed] legal advice."  (D.I. 247, PL_PO_8.)  Thirteen minutes later (at 10:15 pm), Cravath partner Sharonmoyee Goswami sent an email to Mr. Mooney with the subject line "VW" asking "Can we talk about it tomorrow AM?"  Ex. 11 (VW_PO_0000001).  The next day, Mr. Mooney forwarded the Protective Order to Ms. Goswami.  Ex. 12 (VW_PO_0000011).  At 6:04 pm on the same day, Ms. Goswami requested a meeting with Cravath's "OGC" (presumably Office of General

Counsel).  Ex. 13 (VW_PO_0000038).  There was a call at 4:00 pm on Monday, May 8, with Ms. Goswami and Mr. Hummel (counsel of record for Vitaworks); Sophia Tawil (Cravath's General Counsel), and three senior Cravath attorneys not (as far as we know) otherwise involved in this case, Andrew Pitts, Philip Gelston, and Robert Baron.[4]  Ex. 14 (VW_PO_0000086).  At 4:48 pm on Monday, May 8—apparently right after the internal Cravath call described above—Ms. Goswami requested a call with Dr. Qi.  Ex. 15 (VW_PO_0000091).  The following day, May 9, Ms. Goswami was sent a high priority notification reading "Call Keith [Hummel] before you call Jack Blumenfeld [Vitaworks' counsel from MNAT]."  Ex. 16 (VW_PO_0000096).  According to entries on MNAT's privilege log, Cravath and MNAT also exchanged several communications on May 8–11 regarding a draft email to disclose the Protective Order violation, and eventually corresponded and with Fangda and Dr. Hu to provide a draft email to QYP's counsel to disclose the violation on May 11.  (D.I. 246.)  Despite this, Fangda never disclosed the Protective Order violation, and Fangda and Dr. Hu have refused to acknowledge that such a violation took place.

## IV.   ARGUMENT

### A.   Vitaworks has indisputably violated the Protective Order.

The Court can and should find, based on even the current incomplete record, that Vitaworks and Fangda have violated the Protective Order, and that the violation involved improper disclosure to Vitaworks and Dr. Hu of Highly Confidential information relating to QYP's manufacturing process.  This finding can be made now for at least two reasons.

*First*, the Court is entitled to rely on the admission to this effect by Vitaworks' counsel of record.  Cravath reported on May 16 that its co-counsel at Fangda orally conveyed QYP's Highly

---

[4] Cravath's privilege log (D.I. 247) reflects that these individuals corresponded frequently regarding the PO violation throughout the month of May. Sophia Tawil, Cravath's General Counsel, was included on 69 logged communications and documents.

Confidential information to Dr. Hu.  Ex. 7.  Cravath confirmed this report in a May 22 email even after Dr. Qi denied that a violation had took place.  Ex. 9; (D.I. 231.)  Cravath and MNAT then filed a May 25 letter (D.I. 234) responding to QYP's May 22 emergency motion which had incorporated Cravath's report (D.I. 231).  This May 25 letter stated that Cravath and MNAT are "not in a position to dispute QYP's factual assertions in its May 22, 2023 Motion."  (D.I. 234.)  The May 25 letter also referred to the incident as a "violation" and an "unauthorized disclosure." (*Id.*)  This May 25 filing constitutes a judicial admission by Vitaworks' counsel that a Protective Order violation has occurred.  *See, e.g., Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) (judicial admissions can be made as to "matters of fact which otherwise would require evidentiary proof," and such admissions made by counsel are binding on the client).

*Second*, Vitaworks has committed a separate violation of the Protective Order by failing to report "all pertinent facts" surrounding the violation—despite two separate Court orders that it do so.  (D.I. 233; D.I. 240.)  Dr. Qi has provided only conclusory denials.  Ex. 8; Ex. 17 (June 2, 2023 Decl. of F. Qi).  Fangda also ignored the Court's order that it make a document production and provide a privilege log.  Dr. Hu has likewise provided only conclusory denials, failing even to try to explain why *his company's own lawyers* would accuse him of involvement in a Protective Order violation.  (D.I. 235); Ex. 1.

The Qi and Hu declarations are not only incomplete but appear to be carefully worded to avoid full disclosure.  Dr. Hu's declaration, for example, raises whether he has had oral and written communications with Fangda "since the inspection."  Ex. 1 ¶¶ 6–7.  Dr. Qi states that he has not identified any instance in which Dr. Hu has obtained protected information "from any member of the Fangda team after the inspection."  Ex. 17 ¶ 3.  The Court's Order did not limit the required declarations to what was conveyed "since" or "after" the inspection.  (D.I. 240.)  And, Fangda had

access to QYP confidential documents before the inspection, yet that time period is not addressed by the Qi Declaration, nor are communications that may have occurred during the inspection.  Both declarations fall far short of candidly disclosing the pertinent facts concerning the violation.

The Court has given Fangda and Dr. Hu every opportunity to explain why Cravath would have taken the extraordinary step of accusing its own co-counsel and client of violating a Court order.  The fact that they have not even tried to do so is itself an admission.

Nor should Vitaworks be permitted to dispute that a violation occurred by having its lawyers argue the point with each other.  As noted above, we have been informed that the Gimigliano firm will be handling the Protective Order dispute for Vitaworks, while Cravath continues to handle the rest of this litigation.  This development raises the prospect of different firms representing *the same party in the same case* taking contrary positions before the Court. Cravath will presumably continue to maintain that a violation *has* occurred, while its new co-counsel argues that a violation *hasn't* occurred.  The Court can avoid this absurd scenario simply by holding Vitaworks and Fangda to the admissions they have already made.

**B.     The Court should compel Vitaworks to fully comply with the Protective Order and the May 30 Order.**

Nearly a month after the initial report of the violation, we know very few details, because Cravath asserts that it is "unable to provide further details regarding the disclosure because doing so would reveal the content of communications that are protected by the attorney-client privilege and it has not been authorized to do so by the client."  (D.I. 234); (D.I. 246) (Privilege log for MNAT); (D.I. 247) (Privilege log for Cravath).  Vitaworks use of privilege to avoid coming clean about the violation is improper for several reasons.

9

**1.      Vitaworks is improperly withholding <u>facts</u> concerning the violation.**

The Protective Order imposes an obligation on parties before the Court, such as Vitaworks, to provide all pertinent facts concerning the violation.  (PO ¶ 9(b).)  The May 30 Order further requires Vitaworks to explain "the pertinent facts concerning the violation, including (i) what specific information was disclosed, (ii) when the  unauthorized disclosure occurred, (iii) who made the unauthorized disclosure, (iv) to whom any unauthorized disclosures were made; and (v) whether any QYP protected information has been utilized or conveyed to any other individual or entity." (D.I. 240 at 2–3.)  Attorney-client privilege is not relevant to this disclosure requirement. The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). In particular, a client "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at 396 (citation omitted).  Similarly, work product doctrine "does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Moreover, courts have held that neither attorney-client privilege nor work product protects information relating to a Protective Order violation.  *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 239 n.22 (N.D. Cal. 2015) ("violations of a protective order are akin to law breaking such that communications giving rise to protective order violations fall within the crime-fraud exception" of attorney-client privilege and work product protection).  Such is the case particularly where, as here, counsel for Vitaworks at Fangda was the conduit of the breach, has eschewed its disclosure obligations, and refuses to be candid with the Court, thus hindering QYP's ability to mitigate resulting damage. *See Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2010 WL 11566361, at *2 (E.D.N.C. June 15, 2010) (privilege over information regarding

"actions undertaken in furtherance of violations of the Protective Order" were waived under the crime-fraud exception).

Accordingly, the Court should order Vitaworks to immediately provide all pertinent facts relating to the Protective Order violation, including but not limited to the five specific categories of factual information set forth in the Court's May 30 Order.

> **2.      Vitaworks has waived any privilege or work product protection as to any documents related to the Protective Order violation by putting those materials at issue.**

Vitaworks separately waived attorney-client privilege and work product by putting privileged communications squarely at issue in the course of attempting to refute Cravath's report that a violation occurred.

As an initial matter, Fangda did not serve a privilege log by the Court's June 2 deadline, which means any claim of privilege or work product involving Fangda's communications or documents is finished. [5] "A party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) (citing *Dorf & Stanton Commcn's, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996)).  The Court should order Vitaworks to immediately produce work product prepared by Fangda and communications involving Fangda that concern the violation.

In any event, Vitaworks has waived any privilege claim over all of its communications by placing the contents of those communications at issue. *See, e.g.*, *Apple*, 306 F.R.D. at 243 ("[O]nce a litigant decides to affirmatively rely on privileged information thereby placing said information into issue . . . any privilege that may attach is impliedly waived," and this applies "to all documents

---

[5] Cravath's privilege log includes certain communications with Fangda.  *See, e.g.*, (D.I. 246 at 5) (logging PL_PO_32, a communication allegedly from Fang Qi of Fangda).  Fangda failed to log those communications.

related to an entire claim or defense.") (citations omitted).   In particular, Dr. Qi's May 21 letter asserts that there was no violation based on an "internal investigation" Fangda allegedly conducted.   Ex. 8; (D.I. 231.)   Dr. Hu asserted that Dr. Qi did not reveal "any information designated as 'confidential' by QYP to [him]" in their conversations since the inspection, and that none of the written communications between Dr. Hu and Fangda since the inspection "involved the disclosure of confidential information of QYP."  Ex. 1 ¶¶ 6–7.  Vitaworks simply cannot rely on its own descriptions of privileged materials to establish its innocence without providing QYP access to those materials. *See Novartis Pharms. Corp. v. EON Labs Mfg., Inc.*, 206 F.R.D. 396, 398–99 (D. Del. 2002) (by relying on the advice of counsel defense, "Eon has waived any privilege that may pertain to those documents and communications related in any way to its counsel's opinion"); *Apple*, 306 F.R.D. at 244 ("A party may neither disclose nor dispute contents of documents while simultaneously concealing other portions under a claim of privilege, when the truth of the party's statements can only be assessed by examination of the privileged communication.") (internal quotation omitted).

The scope of the implied waiver indisputably extends to *all* of Vitaworks' counsel, not just Fangda.  Cravath obviously has a strong reason for believing that there has been a Protective Order violation.  It would be the worst sort of selective waiver for Vitaworks to produce material related to Fangda's purported "internal investigation" while withholding material related to Cravath's own investigation that found the violation in the first place. *See MKS Instruments, Inc. v. Adv. Energy Indus., Inc.*, No. 03-469 JJF, 2005 WL 8170597, at *5 (D. Del. Aug. 24, 2005) ("When a client voluntarily waives the privilege as to some documents that the client considers not damaging and asserts the privilege as to other documents that the client considers damaging, the rule compelling

production of all documents becomes applicable" and "[t]he reason behind the rule is one of basic

fairness.") (quoting *Hercules Inc. v. Exxon Corp*., 434 F. Supp. 136, 156 (D. Del. 1977)).

Because any privilege or work product protection has been waived, the Court should order

Vitaworks to produce forthwith, from *all* of its law firms, all documents related to the Protective

Order violation reported by Cravath.

### C.   The Court should impose sanctions for the Protective Order violation now, and consider additional sanctions after Vitaworks comes into compliance with the Court's Orders.

Despite Vitaworks' obstruction, we already know from Cravath that Dr. Hu has obtained

QYP's Highly Confidential information, which the Protective Order itself makes clear should not

happen.  (PO ¶ 4(g)) (forbidding Dr. Hu from receiving Confidential Information). While the

extent of the harm to QYP cannot be determined until Vitaworks complies with its obligations

under the Protective Order and this Court's orders, Vitaworks should be sanctioned for its admitted

violation of the Protective Order, failure to comply with the Court's orders, and attempts by Dr.

Hu and Dr. Qi to mislead the Court.

The Court has broad discretion to fashion appropriate remedies for a violation of a

protective order. *See, e.g.*, *Ceats, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470, 2021 WL

3738847, at *2 (E.D. Tex. Aug. 24, 2021).  Sanctions may also be imposed under Federal Rule of

Civil Procedure 37 for failure to comply with a court order to provide or permit discovery.[6]

Sanctions may include directing that matters in the order or other designated facts be taken as

---

[6] *See* Fed. R. Civ. P. 37(b)(2)(A), (C); *MobileMedia Ideas LLC v. Apple Inc.*, C.A. No. 10-258, 2012 WL 5379056, at *3 (D. Del. Oct. 31, 2012) (imposing sanctions under Rule 37 for violation of a protective order); *see also, e.g.*, *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934–35 (9th Cir. 1993) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders," including Rule 26(c) protective orders.") (citing Fed. R. Civ. P. 37(b)(2) Advisory Committee Note, 1970 Amendment, subdivision (b)) (alterations in original); *Smith & Fuller, P.A. v. Cooper Tire  Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is . . . significant authority in support of [] Rule 37(b) sanctions for violation of Rule 26(c) protective orders.").

established for purposes of the action, striking claims or prohibiting the introduction of matters into evidence, striking pleadings in whole or in part, staying further proceedings, dismissing the action, rendering a default judgment, or holding the violating party in contempt.  *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii); *Hunter Eng'g Co. v. Hennessy Indus., Inc.*, No. 4:08 CV 465, 2010 WL 1186454, at *6 (E.D. Mo. Mar. 29, 2010) (holding party in civil contempt for violation of a protective order).  The Court also has the authority under Rule 37 to assess attorneys' fees and costs to QYP relating to QYP's enforcement of the protective order.  Fed. R. Civ. P. 37(b)(2)(C); *Apple*, *Inc. v. Samsung Elecs. Co., Ltd.*, No. 5:11-cv-01846, 2014 WL 12596470, at *10 (N.D. Cal. Jan. 29, 2014) (ordering violating party to "reimburse [moving parties] and their counsel for any and all costs and fees incurred in litigating this motion and the discovery associated with it").

The Court may also impose sanctions under the Court's inherent authority.  *See, e.g.*, *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991) ("[I]t is well-established that courts have the power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process.").  Potential sanctions include the imposition of attorneys' fees, costs, fines, and dismissal of the suit.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991).  Particularly "when a party's conduct evidences bad faith and an attempt to perpetuate a fraud on the court," for example, when a party submits a false declaration, sanctions under the Court's inherent authority may be appropriate.  *See Citrix Sys., Inc. v. Workspot, Inc.*, C.A. No. 18-588-LPS, 2020 WL 5884970, at *6 (D. Del. Sept. 25, 2020) (awarding attorneys' fees and striking equitable defenses as sanctions for filing a false declaration).

Here, not only has Vitaworks admitted a violation of the Protective Order, Vitaworks has also—through sworn declarations from co-counsel and on its own behalf—presented conflicting accounts of the Protective Order violation and failed to comply with the Court's orders.  Vitaworks

14

should be sanctioned for the Protective Order violation itself, its failure to abide by the Court's orders, and its attempts to mislead the Court.

At a minimum, Vitaworks' conduct to date justifies an award of fees and costs QYP has expended in dealing with the violation, because Vitaworks has been "unwilling to accept responsibility or that a violation occurred." *MobileMedia*, 2012 WL 5379056, at *6 (awarding attorneys' fees and costs under Rule 37 incurred by party in litigating a violation of the protective order).

The Court should impose further appropriate sanctions after Vitaworks belatedly complies with the Court's previous orders, and after QYP has an opportunity to make a submission on the question. One sanction that would be appropriate here, given that the violation occurred in connection with an inspection of QYP's manufacturing facility, is precluding Vitaworks' ability to shift the burden of infringement under 35 U.S.C. § 295. *See Citrix*, 2020 WL 5884970, at *6 (striking equitable defenses as a sanction). One requirement for burden-shifting under section 295 is when "the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine." 35 U.S.C. § 295. It would be inequitable, to say the least, for Vitaworks to argue that the plant inspection was inadequate to determine the process QYP uses, when the inspection was apparently adequate to provide Dr. Hu useful information for his own purposes.

## V.    CONCLUSION

For the reasons set forth above, QYP respectfully requests that the Court:

- Find that Vitaworks has violated the Protective Order;

- Order Vitaworks to disclose forthwith the information specified by Paragraph 5(a)(i) of the May 30 Order (D.I. 240), and Paragraph 9(b) of the Protective Order;

15

- Overrule all of Vitaworks' assertions of attorney-client privilege and work product protection that have been made in connection with the Protective Order violation;

- Compel Vitaworks to produce to QYP all documents related to the alleged violation (including responsive documents in the possession of its various law firms), including but not limited to documents related to the discovery, investigation, and or reporting of the violation (*see* D.I. 240 ¶ 5(c)), ***including the documents over which privilege has been claimed***;

- Award QYP its attorneys' fees and other costs incurred in connection with investigating the circumstances of the Protective Order violation and all litigation efforts related to it;

- Preclude Vitaworks from moving for a presumption of infringement under 35 U.S.C. § 295 as an initial sanction for Vitaworks' violation of the Protective Order and failure to disclose the pertinent facts related to the violation as required by Paragraph 9(b) of the Protective Order and the Court's Orders (D.I. 233; D.I. 240), and;

- Allow QYP to move for additional sanctions once Vitaworks has come into compliance with the Court's Orders.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

16

rvrana@ycst.com

Michael N. Kennedy (admitted *pro hac vice*)
Brianne Bharkhda (admitted *pro hac vice*)
M. Nicholas Rutigliano (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 10th Street NW
Washington, DC 20001-4956
(202) 662-6000

Brian Bieluch (admitted *pro hac vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
(424) 332-4800

Ruixue Ran (admitted *pro hac vice*)
Sheng Huang (admitted *pro hac vice*)
COVINGTON & BURLING LLP
2301 Tower C Yintai Centre
2 Jianguomenwai Avenue
Beijing, China 100022,
Telephone: +86 (10) 5910 0591

*Attorneys for Defendants Glanbia Nutritionals (NA), Inc., Prinova US, LLC, and Qianjiang Yongan Pharmaceutical Co. Ltd.*