IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VITAWORKS IP, LLC and<br>   VITAWORKS, LLC, | )<br>)<br>) | |
|            Plaintiffs, | )<br>) | |
|    v. | )<br>) | C.A. No. 19-2259 (GBW)<br>(CONSOLIDATED) |
| | ) | |
| GLANBIA NUTRITIONALS (NA), Inc.,<br>  et al., | )<br>)<br>) | |
|            Defendants. | )<br>) | |

**MEMORANDUM ORDER**

The Court entered an Order assigning me to serve as a special master to hear and decide discovery disputes in this litigation. (D.I. 261). This Memorandum Order addresses Defendants' motion to: (1) order production of documents from Zhen "Michael" Song pursuant to the parties' ESI protocols and search terms; and (2) permit Defendants to inspect Dr. Hu's office and a storage room at Vitaworks' facility. Having considered the parties' letter submissions and after argument on the issues, this Order serves to set forth my ruling.

**Defendants' Issue #1 re: Dr. Song's documents**

Defendants request that Plaintiffs be ordered to collect documents from third party, Zhen "Michael" Song, using the parties' agreed upon ESI protocol and search terms and produce those that are responsive to Defendants' Requests for Production. *See* Defs. Op. Letter Brf. at 1 (July 19, 2023). Defendants argue that Dr. Song's documents are within the control of Plaintiffs for two reasons. First, Defendants argue that Dr. Song is Plaintiffs' agent and representative because he has been "intimately involved in Vitaworks' licensing activities, patent procurement, and

litigation efforts[1] against QYP." *Id.* Defendants also argue that Dr. Song's company, Xujie, has a "contractual obligation" pursuant to a 2021 license agreement between Plaintiffs and Xjuie that requires Xijuie to cooperate with Plaintiffs in the "enforcement, defense and prosecution" of the licensed patents, including providing "any necessary documents or instruments." *Id.* at 1 and Exh. 5 at §3.6(b).[2]

Under Rule 34, "control generally addresses the legal right, authority, or ability of the party to whom/which the Rule 34 request is directed to exercise lawful possession over the . . . documents at issue." *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999); *see also Princeton Digit. Image Corp. v. Konami Digit. Ent., Inc.*, 316 F.R.D. 89, 90 (D. Del. 2016) (stating that documents are "in the control" of a litigating party "if that party has the "'legal right to obtain the documents on demand'" from the non-party entity) (internal citations omitted). A principal-agent relationship is one way to demonstrate control but is not required. *Id.*; *see also* Fed. R. Civ. P. 34.

Plaintiffs state in response to Defendants' Interrogatory No. 21 that "Dr. Hu has communicated with Dr. Michael Song about QYP's taurine manufacturing processes *many times*

---

[1] I have requested copies of the documents cited in Defendants' Exhibit 1 that reference Dr. Song's involvement in the litigation. Due to the timing of the decision, I wanted to get the parties my order and therefore did not have the benefit of the documents at the time this order was issued. Ultimately, I reached the decision without needing to get to whether Dr. Song is or is not involved in the litigation, although I will review the documents when provided and amend my order if needed.

[2] It is my understanding that Plaintiffs have agreed to produce documents related to Dr. Song's interactions with AoKe and Jiaao and his communications with other third parties concerning licensing Plaintiffs' taurine-related patents. However, at argument, Defendants stated that there has only been minimal production (a handful of documents). Plaintiffs stated that they have some additional production to make but it is also of a limited number of documents. Plaintiffs also state that they have agreed to produce (or have already produced) documents from Xujie and communications between Dr. Song and Dr. Hu. Pltf. Resp. Letter Brf. at 2 n.3 (July 24, 2023). Moreover, because I determined there is a principal-agency relationship, I do not address whether the license agreements provide a contractual obligation for Dr. Song to cooperate.

2

since January 1, 2013." Defs. Op. Letter Brf. at Exh. 3, p. 5.  Such discussions in 2015 included "whether [Hubei] would be interested in retrofitting its existing factory to make taurine," and "licensing and a joint venture agreement."  Pltfs. Resp. Letter Brf. at Exh. 4, p. 2 (Response to Interrogatory No. 6).  And in 2021, Dr. Song, on behalf of Xujie, approached Plaintiffs about the possibility of building a taurine plant, and Xujie subsequently entered into a licensing and distribution agreement with Plaintiffs.  *Id.* at Exh. 4, p. 4 (Response to Interrogatory No. 6).  There are several other meetings with third parties concerning building taurine plants and licensing the patents-in-suit that involved Dr. Song detailed in response to Interrogatory No. 6. *Id.* at Exh. 4, p. 8, 11.  Moreover, Dr. Song has been "authorized to represent" Plaintiffs at various times on "the matter of taurine-related business discussion[s]."  Defs. Op. Letter Brf. at Exh. 4.  While the letter attached at Exh. 4 states that the discussions were "with you", there is no addressee on the letter, and it appears to be of a generic format addressed to "Sir/Madame."  *Id.* It is not clear to me that this letter was not used on any other occasions or, in fact, to whom it was directed.  One reading could be that Plaintiffs were providing Dr. Song with broad authority use this letter to meet with and discuss Plaintiffs' taurine-related business with anyone he chose as the letter itself is not limited to any specific person, company, or addressee.

      Based on the limited record before me, at a minimum, Dr. Song had an agency relationship with Plaintiffs related to "meeting with and discussing taurine-related business" with third parties and such meetings involved at least discussions of potential taurine plants and licenses.  Given that relationship, I find that Plaintiffs must produce and collect all documents related to and concerning any meetings or discussions of Plaintiffs' taurine-related business, including all ESI.  The search terms set forth in Exhibit 2 of Plaintiffs' responsive letter, however, contain some broad search terms that could pose an undue burden on Plaintiffs and Dr.

3

Song (for example, the terms related to notebook, experiment, etc.). I therefore order the parties to meet and confer and arrive at search terms that would capture documents concerning this category of information. Some examples (although my order is not limited to these) could be the licensing terms identified on page 2 of Exhibit 2, the taurine terms on page 1 of Exhibit 2, and the asserted patent numbers.

**Defendants' Issue #2: Inspection**

<u>Dr. Hu's Office:</u> Defendants seek an order requesting a full inspection of Dr. Hu's office to inspect how documents and records are maintained by Dr. Hu and to determine if any additional records related to his work on taurine-related projects exist. Plaintiffs' Letter states that they have committed to produce any "notes related to" research on an "MEA" process for making taurine. Pltfs. Resp. Letter Brf. at 3. During argument, Defendants stated that they are in possession of photographs of Dr. Hu's office from earlier litigation between the parties. Given the intrusive burden and low likelihood of uncovering additional information during an unbridled inspection, I order that Plaintiffs take photographs of Dr. Hu's office, including detailed photographs of Dr. Hu's document storage and records as they are stored so that Defendants can compare the earlier photographs to his current office. I also order Plaintiffs to make available for inspection (as offered during the hearing), the hard copies of any documents that have already been produced to Defendants so that Defendants can inspect how the documents are kept in the ordinary course of business. Following receipt of the photographs and any inspection of the hard copies, should Defendants still require additional information, they should meet and confer with Plaintiffs and if necessary, reach out to me with any further disputes on this issue.

<u>The Storage Room</u>: According to the parties, during the July 12 inspection, Defendants requested entry into a storage room. Plaintiffs allowed Defendants to look in the room, but they were not permitted to inspect the interior of a cabinet that appeared to contain a large bottle of white powder and several closed compartments. The room also contained several sealed boxes and one open box of numerous chemicals. While it is true that this is a chemical company with chemistry labs and such labs might be expected to store bottles of chemicals and a large bottle of white powder, the Request for Inspection included a request to inspect "all areas" where Dr. Hu stored chemicals and any other raw materials used in any Experiment and any samples of any substance generated during or as a result of any Experiment. Pltfs. Resp. Letter Brf. at Exh. 6, p. 2. When I inquired at the hearing as to whether any inventory documentation was kept in the ordinary course concerning the contents of the storage room, counsel was not sure but offered to inquire. Given the language in the Request for Inspection, I order that the storage room was within the scope of the inspection areas. Should Defendants want to inspect that room, they are permitted to do so. Alternatively, the parties could meet and confer to find a potential compromise result whereby Plaintiffs produce a detailed inventory along with photographs of the contents of the room.

Dated: July 27, 2023                 <u>/s/ Karen E. Keller</u>
                                     Special Master Karen E. Keller, Esq.